Argued and submitted May 27, affirmed November 30, 1983

LUTON, fka Shirley,
*Appellant,*

*v.*

SHIRLEY,
*Respondent,*

*and*

SHIRLEY,
*Third Party Claimant - Respondent.*

(T10-831; CA A26215)

672 P2d 395

Robert Barsocchini, King City, argued the cause for appellant. On the brief was Paul J. Rask, King City.

John P. Davenport, Portland, argued the cause for respondent and third party claimant-respondent. On the brief were Sylvia E. Stevens and Sussman, Shank, Wapnick, Caplan & Stiles, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff appeals from a trial court order quashing certain writs of garnishment issued by the Washington County Circuit Court Clerk. We affirm.

The judgment on which the writs were based had been obtained in Multnomah County. The plaintiff then registered the judgment in Washington County, pursuant to ORS 18.320, and obtained the writs which are the subject of this proceeding; the writs were served on two Washington County banks. Following certain procedural steps not material to this opinion, the trial court quashed the writs on the theory that writs of garnishment may only be issued by the clerk of the court in the county in which the judgment was obtained. This appeal followed.

ORS 29.145 sets out the garnishment process:

"(1)   The clerk of the court shall promptly issue one or more writs of garnishment upon application of the following persons:

"* * * * *

"(b)   A person on whose behalf a judgment requiring the payment of money has been entered."

Plaintiff urges that she has met both requirements of the statute: she is "a person on whose behalf a judgment requiring the payment of money has been entered" and she has requested the "clerk of the court" to issue the writs.

We do not find the answer to be so simple. While there is no question that a judgment has been entered for plaintiff, there is a very real question whether the "Clerk of the Court" referred to in the garnishment statute refers only to the clerk of the court where the judgment was originally obtained or, instead, refers to any clerk in whose county the judgment has been registered pursuant to ORS 18.320.

In *Lovelady v. Burgess,* 32 Or 418, 420, 52 P 25 (1898), the Supreme Court addressed the same issue with reference to analogous statutes, §§ 269 and 277, *Hill's Ann. Laws,* then in effect.[1] The court said:

---

[1] The statute most directly analogous is ORS 23.050, which covers the issuance of writs of execution. At the time of *Lovelady v. Burgess, supra,* and for many years

"The remaining question is whether the clerk of Douglas County could legally issue an execution on a judgment rendered in Josephine County, and, in our opinion, it must be answered in the negative. The rule is undoubted that, unless otherwise provided by statute, an execution can issue only from the court in which the judgment was rendered, and we have no statute modifying or destroying this rule. Section 269, Hill's Ann. Laws, authorizes a transcript of the original docket of a judgment to be filed in the office of the county clerk of any county in the state, and requires such clerk to enter the same in the judgment docket of his county, from which time it becomes a lien upon all the real property of the party against whom the judgment was given within the county, or which he may afterwards acquire therein during the time that execution may issue on such judgment. But the only object of this section, as plainly indicated by its terms, is to give the judgment creditor a lien upon the real estate of the judgment debtor in the county where filed, and it confers no authority upon the clerk of such county to issue an execution thereon. An execution may issue at the same time to different counties (Section 277, Hill's Ann. Laws), but it can issue only from the county in which the judgment was rendered."

Plaintiff acknowledges the holding in *Lovelady* but urges:

"This holding is not in conformance with modern practice and should be overruled. Moreover, the court's analysis of § 277, Hill's Ann. Laws, is erroneous * * *."

The distinction between our overruling *Lovelady,* as plaintiff first suggests, and our merely disapproving *Lovelady's* pivotal construction of the pertinent statute, as she next urges, escapes us. We are an intermediate appellate court and are bound by the Supreme Court's holding in *Lovelady.* If that

---

thereafter, garnishment existed only as one of the procedures available under the authority of a writ of execution. In 1977, the legislature added the writ of garnishment as a method of garnishing money obligations, but the writ of execution remained available for the same purpose. Or Laws 1977, ch 613, *codified at* ORS 23.650 to 23.670. In 1981, the legislature revised judgment collection procedures and made the writ of garnishment the exclusive method of garnishing money or other property. Or Laws 1981, ch 883, *codified at* ORS 29.125 to 29.395. The statutes we construe were first enacted as part of the 1981 revision. However, their essential similarity to the comparable execution statutes and the failure of the parties to present to us any reason to construe the provisions concerning issuance of a writ of garnishment differently from those concerning issuance of a writ of execution lead us to treat the two as having the same requirements, so far as who may issue the writs is involved.

case is in error, plaintiff must get the Supreme Court to say so or obtain a change in the statute from the legislature.

Plaintiff argues, in the alternative, that changes in the statutes since *Lovelady* require a different result. The original registration statute, § 269, *Hill's Ann. Laws,* which was construed *in pari materia* with § 277 in *Lovelady,* provided:

> "Immediately after the entry of a judgment in any action, the clerk shall docket the same in the judgment docket. At any time thereafter, while an execution might issue upon such judgment, and the same remains unsatisfied in whole or in part, the plaintiff, or in case of his death his representative, may file a certified transcript of the original docket in the office of the county clerk of any county in this state. Upon the filing of such transcript, the clerk shall docket the same in the judgment docket of his office. From the date of docketing a judgment as in this title provided, or the transcript thereof, such judgment shall be a lien upon all the real property of the defendant within the county or counties where the same is docketed, or which he may afterwards acquire therein, during the time an execution may issue thereon."

Its present counterpart, ORS 18.320, provides:

> "Immediately after the entry of a judgment in any action the clerk shall docket the same in the judgment docket, noting thereon the day, hour and minute of such docketing. At any time thereafter, so long as the *original judgment* remains in force under ORS 18.360, and is unsatisfied in whole or in part, the plaintiff, or in the case of his death, his representative, may file a certified transcript of the *original docket* in the office of the county clerk of any county in this state. Upon the filing of such transcript the clerk shall docket the same in the judgment docket of his office, noting thereon the day, hour and minute of such docketing. A certified transcript of the new docket entry of a judgment renewed under ORS 18.360 may likewise be filed in another county." (Emphasis supplied.)

From the foregoing, plaintiff argues that the legislature has shown that it knows how to distinguish between "original" judgments, *i.e.,* those obtained where actions are brought, and other judgments, *i.e.,* those later docketed in other counties. By contrast with ORS 18.320, plaintiff argues, ORS 29.145(1)(b) does not refer to or distinguish "original"

judgments. It follows, plaintiff concludes, that writs of garnishment can issue pursuant to *any* judgment under ORS 29.145(1)(b).

We disagree. The legislative insertion of the word "original" in two places in ORS 18.320 is obviously aimed at a concern peculiar to the statute itself: docketed transcripts of judgments—which always postdate the primary judgment obtained where the action was brought—are viable only so long as the primary (*i.e.,* "original") judgment is viable. The distinction avoids the anomaly that a docketed transcription of a judgment could remain a cloud on the title to property in the county in which it was docketed in spite of the fact that the original judgment had expired. Second, and more important, plaintiff has not pointed to any way—and we have found none—in which the differences between the language of ORS 29.145(1)(b) and that construed in *Lovelady* would suggest, much less require, that the statute now be interpreted in a manner contrary to *Lovelady*.

We hold that, under ORS 29.145(1)(b), the phrase "Clerk of the Court" refers to the clerk of the court in the county in which a judgment was first obtained.[2]

Affirmed.

---

[2] An examination of the garnishment statutes in ORS ch 29 supports our conclusion. For example, ORS 29.165(1) states, in pertinent part:

"A writ of garnishment shall be delivered in person and not by mail *by the sheriff of the county where the writ of garnishment is to be delivered.* * * *" (Emphasis supplied.)

If the writ of garnishment on behalf of a judgment creditor could be issued by the clerk of court in any county where the judgment is registered, we would expect the statute to refer to the sheriff of the county where the writ of garnishment "is issued," rather than "is to be delivered."